# Richmond

## D. T. Vicars v. Atlantic Discount Company, Inc.

March 8, 1965.

Record No. 5883.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*Jerry E. Dishner*, for the plaintiff in error.

*John W. Riely* and *Richard G. Joynt* (*Hunton, Williams, Gay, Powell & Gibson*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Atlantic Discount Company, Inc., the plaintiff, brought an action in detinue against D. T. Vicars, the defendant, seeking to recover the possession of a Chevrolet Corvette automobile. The defendant filed grounds of defense in which he denied that he unlawfully detained possession of the automobile from the plaintiff.

The case was heard by the trial court, sitting without a jury, and possession of the vehicle, or an alternative money judgment of $1950.00, was awarded the plaintiff. The defendant was granted a writ of error.

The evidence shows that on April 3, 1962, Mrs. C. L. Powell purchased from Albany Motors, also known as Newell Motor Company, of Albany, Georgia, a Chevrolet Corvette automobile. An unsigned bill of sale was given to Mrs. Powell showing the price of the car to be $2895.00, with a down payment of $995.00 and an "amount to finance" of $1900.00, to be "financed by Atlantic Discount Company, Inc."

The bill of sale described the automobile as a 1960 model Chevrolet Corvette "2-dr HT & Conv.," with a serial number of 01121A108468.

Mrs. Powell executed a conditional sale agreement stipulating that title to the vehicle was to be retained by the holder, "meaning Seller, or Atlantic Discount Company, Inc. . . . if this contract is assigned to it," until the unpaid balance of the purchase price was paid in full. The agreement provided that, upon default, the holder would be entitled to immediate possession. The vehicle was described in the

agreement in the same manner as set forth in the bill of sale, again calling for a 1960 model Corvette with a serial number of 01121A10-8468.

Attached to the conditional sale agreement was an assignment thereof to the plaintiff, which was executed on behalf of Albany Motors by W. L. Fowler. Also attached was another document executed by both Fowler and Mrs. Powell and acknowledged by the latter. This document described the vehicle in the same manner as set forth in the bill of sale and conditional sale agreement and on its reverse side was an assignment thereof to the plaintiff.

The conditional sale agreement and its attachments were recorded in the clerk's office of Dougherty County, Georgia, on April 12, 1962.

On the date of her purchase of the automobile, Mrs. Powell applied for license plates and was issued a Georgia plate for 1962 bearing the number 25-D-838. She also received a registration certificate with the same year model and serial number shown for her automobile as was listed on the papers previously described.

In the first part of June, 1962, the automobile "broke down" and Mrs. Powell left it with a mechanic, Oscar Parker, in Atlanta, Georgia. Parker was to repair the vehicle and deliver it to Mrs. Powell in Albany. Although she "kept calling and asking him to fix the car and bring it to me", Parker did not return the vehicle to Mrs. Powell and she was never able to recover its possession.

After making the payment due in June, 1962, Mrs. Powell defaulted in the payments required by the conditional sale agreement.

Meanwhile, on June 14, 1962, D. A. Greene, of D. A. Greene Motors, Inc., of Kingsport, Tennessee, purchased a Chevrolet Corvette from a motor company in Atlanta, Georgia. Greene secured a Tennessee certificate of title to the vehicle. He later sold the car to the defendant, delivering to him the Tennessee certificate. The defendant then secured a certificate of title from the Virginia Division of Motor Vehicles.

An investigation of the loss of Mrs. Powell's automobile was conducted by the Federal Bureau of Investigation, the Georgia Bureau of Investigation and the National Automobile Theft Association. This investigation led to the vehicle held by the defendant in Nickelsville, Virginia, and the present litigation ensued.

The vehicle purchased by the defendant was described as a 1959 model Chevrolet Corvette with a serial number of J59S108468. This

description differed from that of the vehicle purchased by Mrs. Powell in that the latter was described as a 1960 model with a serial number of 01121A108468. The evidence showed that all serial numbers of 1959 Corvettes commenced with "J59" while 1960 models began with the digit "0". However, there was no difference in appearance between a 1959 model and a 1960 model Corvette.

The plaintiff offered testimony to show that when Mrs. Powell purchased her vehicle, a representative of Albany Motors inserted the incorrect year model and serial number on the bill of sale and conditional sale agreement "to get the finance company to give more money on financing of the car." This evidence was ruled out of the case upon the objection of the defendant. However, the defendant now relies on this testimony to impeach the transaction between Albany Motors and Mrs. Powell and he will be taken, therefore, to have waived the objection.

There was evidence showing that the last six digits of the serial number of the Powell vehicle were identical with the last six digits of the defendant's serial number; that these six digits represented the production number of the vehicle and that only one Corvette would be manufactured each year bearing a number containing those same last six digits.

The evidence showed that the vehicle purchased by Mrs. Powell was a two-door hardtop convertible, gunmetal or blue-gray in color; that it had a fuel injection system, an uncommon type of equipment, and that it had a crack in a fender and damage under a door. The evidence further showed that the vehicle held by the defendant had these same characteristic points of identification. And, most surprising of all, it was shown that when the sheriff took the automobile into possession from the defendant, under the detinue warrant, he found in the trunk a license plate which turned out to be the same one that had been issued to Mrs. Powell in Georgia, bearing the number 25-D-838.

Mrs. Powell was called as a witness on behalf of the plaintiff. She was permitted to view the vehicle in dispute and when she returned to the witness stand she was asked, "Is that the car you bought from the Albany Motor Company on April 3, 1962?" She replied, "Yes, sir. It certainly is."

The parties agree that the law of Georgia is to control all questions as to the status of the title of the plaintiff to the automobile in question. However, as the defendant suggests, the law of Virginia

must control all questions of procedure, burden of proof and sufficiency of evidence.

In Virginia, "in order to maintain the action of detinue these points are necessary: (1) The plaintiff must have property in the thing sought to be recovered; (2) he must have the right to its immediate possession; (3) it must be capable of identification; (4) the property must be of some value, and (5) the defendant must have had possession at some time prior to the institution of the action." Burks Pleading and Practice, 4th Ed., Sec. 126, p. 241.

The last two points cited by Burks are not in issue in this case. The defendant's position generally revolves around the first three points. His contentions are that the plaintiff did not prove its title or its right to possession and did not establish the identity of the vehicle in dispute.

The parties agree that at the time of the sale to Mrs. Powell, Georgia was a non-title state, that is, there was no statute requiring the registration of title to a motor vehicle. The parties are, however, in dispute as to the manner in which title to a motor vehicle could properly be passed in Georgia.

The defendant asserts that "the state of Georgia requires a Bill of Sale, executed by seller in order to transfer title to a vehicle" and since the bill of sale delivered to Mrs. Powell was unsigned, it was invalid.

We have been unable to find any support in Georgia law for the defendant's assertion. To the contrary, section 29-108 of the Georgia Code provides:

"A deed to personalty needs no attesting witness to make it valid; in other respects the principles applicable to deeds to lands are applicable to it. *Generally, a deed is not necessary to convey title to personalty.*" [Emphasis added.]

In the case of *Grice & Ryan* v. *Haskins*, 73 Ga. 700, 703, the Supreme Court of Georgia said:

". . . Writing is not necessary to pass the title to personal property; this may be *affected* by sale and delivery."

There was ample evidence of the sale and delivery of the automobile from Albany Motors to Mrs. Powell. Her oral testimony buttressed the unsigned bill of sale and showed that such sale and delivery actually took place. In addition, the conditional sale agreement itself provided evidence thereof.

The agreement, entered into between Albany Motors and Mrs.

Powell, stated that "Customer . . . has today purchased . . . examined . . . and received delivery from Seller of the MOTOR VEHICLE."

Moreover, there was, as has been noted, a document attached to the conditional sale agreement. This document, executed by Mrs. Powell and a representative of Albany Motors, bore all of the earmarks of a bill of sale and offered indisputable evidence of the sale and delivery of the vehicle. The document was described as a "Bill of Sale to secure debt" in the certificate of the Georgia clerk of court attesting its authenticity. A similar paper was so termed in the Georgia case of *Yancey Brothers Company* v. *Dehco, Inc.*, 108 Ga. App. 875, 134 S. E. 2d 828, 830.

This document stated that Mrs. Powell had "purchased and acknowledged delivery from Albany Motors" of the vehicle in question. The automobile was described in detail and "the terms of this purchase and sale" were set out in full.

Section 29-104 of the Georgia Code provides:

"No prescribed form is essential to the validity of a deed to lands or personalty. *If sufficient in itself to make known the transaction between the parties, no want of form will invalidate it.*" [Emphasis added.]

A bill of sale is merely a deed to personalty by which "one person assigns or transfers his right to or interest in goods and personal chattels to another." Black's Law Dictionary, 4th Ed., p. 211.

The document attached to the conditional sale agreement clearly made "known the transaction" between Albany Motors and Mrs. Powell and, under Georgia law, would appear to have been sufficient as a bill of sale by which Mrs. Powell acquired a "right to or interest in" the motor vehicle from Albany Motors.

By the terms of the transaction between the motor company and Mrs. Powell, the former retained title to the vehicle and the latter became vested with the right to its possession and with the right of redemption, subject to the payment of the balance of the purchase price.

The rights of Albany Motors were assigned to the plaintiff. When Mrs. Powell defaulted in her payments under the conditional sale agreement, the plaintiff then held complete title to, and was vested with the right to the possession of, the vehicle.

But, the defendant argues, the plaintiff should have been required to show that its chain of title originated in some source common to the title of the defendant and that the latter's title did not emanate from that source prior to the plaintiff's.

Such a burden did not rest upon the plaintiff. There was nothing offered to impeach the title of Albany Motors to the vehicle. The plaintiff attached itself to that title; showed possession in Mrs. Powell; proved that she was unlawfully divested of that possession at a date prior to the beginning of the defendant's chain of title, and established the default in the conditional sale agreement. That being so, the plaintiff fully met its burden of proof. For the defendant to prevail, it was incumbent upon him then to show that his was the superior claim. This he did not do. *Glenn* v. *Haynes*, 192 Va. 574, 582, 66 S. E. 2d 509. 26A C. J. S., Detinue, § 20, pp. 908, 909.

■ Next, the defendant contends that the incorrect description of the year model and serial number of the vehicle, in the conditional sale agreement, invalidated that agreement.

This contention is squarely met by a decision of the Court of Appeals of Georgia, which is precisely in point. In *Trusco Finance Co.* v. *Childs*, 87 Ga. App. 789, 75 S. E. 2d 336, an incorrect motor number, not even vaguely resembling the true number, was inserted in a conditional sale contract covering an automobile. The court said "the incorrect motor number did not vitiate the contract . . . 'mere false description does not make an instrument inoperative.'" The court further stated that other descriptive material in the contract, similar to the description in the agreement before us, was sufficient to constitute the contract as constructive notice to a third person that title to the vehicle had been retained by the seller.

■ This brings us to the defendant's contention that the plaintiff failed to prove that the vehicle in the defendant's possession was the same one sold by Albany Motors to Mrs. Powell.

The trial court's finding as to the identity of the vehicle was upon conflicting evidence and carries with it, therefore, the weight of a jury verdict. If the finding was supported by evidence, it cannot be disturbed here.

The evidence bearing on the identity of the vehicle has already been set out in detail and need not be repeated. Suffice to say that it was sufficient to support the finding of the trial court. If there was otherwise any doubt that the defendant held the same automobile that was purchased by Mrs. Powell, that doubt was completely dispelled by the evidence that her license plate was found in the trunk of his car.

■ Finally, the defendant contends that because he was a bona fide purchaser for value without notice of the plaintiff's lien, he was entitled to judgment in his favor.

This contention is without merit. In the first place, under the rule of *Trusco Finance Co. v. Childs, supra,* the plaintiff's recorded conditional sale agreement was, under Georgia law, sufficient to provide constructive notice of the plaintiff's claim.

Furthermore, the trial court found that Mrs. Powell lost possession of the automobile by theft or unlawful conversion prior to the time that Greene, the dealer from whom the defendant purchased, had acquired the vehicle in Atlanta. That finding was proper under the evidence. That being true, Greene and, of necessity, the defendant, were forced to rely upon the title of the thief or converter. What title did they, as a result of such reliance, secure unto themselves? The law of Georgia has the answer.

Section 96-111 of the Georgia Code provides:

"The seller can convey no greater title than he has himself. . . ."

And in *Guthrie v. Hendley,* 56 Ga. App. 438, 193 S. E. 80, it was said:

"There being no market overt in Georgia, but the doctrine of caveat emptor being of force, a purchaser of personal property from one who is not the true owner acquires no title against the true owner by reason of the bona fides of his purchase, when he purchases from one who is an utter stranger to the title and who can convey no title . . . ."

Thus, the defendant, no matter how valid his claim of good faith, acquired no title to the vehicle, as against Mrs. Powell, because of his dependency upon the title of the person who stole or converted the vehicle from her. The defendant cannot, therefore, under the circumstances of this case, be classified as a bona fide purchaser so as to defeat the claim of the true owner. Any other result would, as the trial court appropriately stated, "place a premium on the theft of personal property."

Upon the whole record we are satisfied that the plaintiff established its right and title to the vehicle under Georgia law and met the procedural requirements of Virginia law in the maintenance of its detinue action. Accordingly, the judgment will be

*Affirmed.*