48974. NATIONAL HEALTH SERVICES, INC. v. TOWNSEND.

Eberhardt, Presiding Judge. National Health Services, Inc., d/b/a Hallmark Nursing Home, and Bill Townsend, a respiratory therapist, entered into a written contract whereby the therapist agreed to furnish all equipment and services necessary for providing respiratory therapy to patients of the nursing home "whenever such services are prescribed by a physician either verbally or in writing." The therapist agreed to submit daily charges for his services to the nursing home at rates prescribed in the contract, and the nursing home agreed to pay him monthly at the rate of 75% of the charges submitted, the nursing home being entitled to "charge and receive for its processing patients' claims an amount equal to 25% of the charges submitted by the therapist."

The contract was dated May 22, 1973 and was to continue for a definite period of one year from that date. The therapist began rendering his services as provided for by the contract on May 22, but the nursing home, becoming concerned that Medicare and similar programs would not provide funds for payment for the services to its patients,[1] told the therapist to stop the services and instructed the physician treating its patients to discontinue prescribing the treatments. Thus on June 14, 1973, some 23 days after the inception of the contract, the therapist's services under the contract were discontinued by the nursing home.

The therapist then brought the instant action against the nursing home, alleging that it had breached and repudiated the contract, and seeking to recover liquidated damages of $2,288 for services rendered, and unliquidated damages of $20,000 as the value of the contract. Defendant nursing home allowed the case to become in default, and a default judgment was entered against it holding it liable to the therapist for breach of contract in the amount of $2,112 as liquidated damages for services rendered,[2] and in an amount to be determined upon the presentation of evidence as to the unliquidated claim.

On the date set for the presentation of evidence as to the amount of the unliquidated damages, the nursing home appeared and filed a written demand for trial by jury, which was denied. The therapist introduced his evidence before the court, and at its conclusion the nursing home moved for an order holding that the therapist suffered no unliquidated damages. The motion was based upon the assertion that the therapist failed to show with reasonable certainty what his profit would have been had the contract been continued in full force and effect for its entire life, and that he made no effort to mitigate the unliquidated damages. The motion was overruled and the nursing home presented its evidence, after which the court entered its findings of fact, conclusions of law, verdict and judgment. The court ruled, inter

---

[1] The contract was not conditioned upon this availability of funds for payment.

[2] The judgment for liquidated damages was granted in the amount of $2,112, rather than $2,288 as prayed, due to the fact that the exhibit attached to the complaint setting out the amount of plaintiff's charges omitted a charge of $176 for services rendered.

alia, that the case was in default and the only issue at the trial was the amount of the therapist's damages; that the therapist proved his liquidated and unliquidated damages by a preponderance of the evidence as $2,112 and $20,176, respectively; and that these amounts should be reduced by 25% as provided by the contract to $1,584 and $15,132. Verdict and judgment were entered accordingly against the nursing home, and it appeals to this court, urging that the trial court erred in denying its demand for trial by jury as to the unliquidated damages, that the therapist's anticipated profits were not proven to a reasonable certainty, and that the profits were not recoverable because the therapist did nothing to mitigate or reduce his damages. *Held:*

1. The State Court of Houston County, formerly known as the City Court of Warner Robins (see Ga. L. 1967, p. 2564), is a court of record (Ga. L. 1965, pp. 2650, 2656 § 17; Code Ann. § 24-2108a; Code Ann. § 24-2101a, Ga. L. 1965, pp. 2650, 2651 § 2, as amended); *Crosby v. Dixie Metal Co.,* 227 Ga. 541 (181 SE2d 823)), to which the Civil Practice Act applies. Code Ann. §§ 24-2107a, 81A-101; Ga. L. 1965, pp. 2650, 2656 § 19; *Gresham v. Symmers,* 227 Ga. 616 (182 SE2d 764); *Electro-Kinetics Corp. v. Wilson,* 122 Ga. App. 171 (176 SE2d 604). The Act provides that when a case involving unliquidated damages is in default as in the circumstances of this case, "the plaintiff shall be required to introduce evidence and establish the amount of damages *before the court without a jury* as to actions ex contractu . . ." CPA § 55 (a) (Code Ann. § 81A-155(a)) (Emphasis supplied.) See *Georgia Farm Bureau Mut. Ins. Co. v. Williamson,* 124 Ga. App. 549, 550 (3) (184 SE2d 665). While CPA § 39 (Code Ann. § 81A-139) provides that "In all actions not triable of right by a jury, . . . the court may nevertheless order a trial with a jury . . . " the most that can be made of this provision is that the grant or denial of such a jury trial is committed to the trial court's discretion with which the appellate courts normally refuse to interfere. See and compare 5 Moore's Federal Practice, §§ 39.08, 39.09; 9 Wright & Miller, Federal Practice and Procedure: Civil § 2334. No sufficient reason for our interference has been made to appear here, and we accordingly find no error in denying the demand for jury trial.

2. The nursing home contends that the therapist's anticipated profits under the contract are so speculative, remote and uncertain as not to be recoverable. It is urged that since the services to be rendered by the therapist were dependent upon the

verbal or written order of the doctor, the damages were speculative because the doctor might not continue to prescribe the services. The evidence is otherwise, however, as the doctor testified that there were fourteen patients in May for whom he was prescribing the treatment, and that there were, at the time of trial, some four months after the inception of the one-year contract, fourteen patients who needed the treatments. He testified that the reason he discontinued prescribing them was because the administrator of the nursing home called him and asked him to do so. While the nursing home points to this discontinuance as illustrating speculation on the therapist's part that the doctor would continue to prescribe the treatments, the evidence shows that he would have continued prescribing them except for the nursing home's breach of the contract by instructing him otherwise, notwithstanding its promise "to cooperate with the therapist in the performing of his duties." The therapist introduced definite evidence as to his gross weekly earnings for services performed, his expenses and cost of equipment, or expense of doing business, and it also appears that his earnings were in an uptrend from the inception of the contract until its termination. The verdict was well within the range of the evidence, and we cannot say that he did not prove his damages with the degree of certainty required by law. See *Nicholson v. Williamson,* 29 Ga. App. 692 (2) (116 SE 321); *Levy Brother & Co. v. Allen,* 53 Ga. App. 246 (185 SE 369); *Bennett v. Associated Food Stores, Inc.,* 118 Ga. App. 711, 716 (165 SE2d 581).

3. "The burden is upon the party asserting that the opposite party could have lessened his damages, and such proof must include sufficient data to allow the jury to reasonably estimate how much the damages could have been mitigated." *Davidson v. Consolidated Quarries Corp.,* 99 Ga. App. 359 (8) (108 SE2d 495). The therapist testified that he could not have lessened his damages, and the nursing home introduced no evidence to show that he could have done so or in what amount. Accordingly there is no merit in the enumerations of error regarding this issue.

*Judgment affirmed. Pannell and Evans, JJ., concur.*

SUBMITTED JANUARY 14, 1974 — DECIDED JANUARY 29, 1974.

*Aultman, Hulbert, Cowart & Daniel, H. A. Aultman, Durward B. Mercer,* for appellant.

*Spence, Smith & Williams, George L. Williams, Jr.,* for appellee.